Today's docket is the case of Hemminghaus, Elmer Hemminghaus et al. v. Gary Hemminghaus and we have Mr. Thomas DeVore for the appellant and Mr. Patrick Shuffelberger for the appellant and you may proceed when you're prepared to. Mr. Thomas DeVore If it pleases the court, counsel, your honors, myself and Mrs. Polinsky are here today on behalf of Elmer and Betty Hemminghaus We're here on behalf of Elmer and Betty Hemminghaus individually and what we're asking the court to do is find that it was an error for the trial court not to grant their petition to vacate a judgment that was entered on September 12, September 19, 2012 in another matter. Before I get to that, Judge, I'd like to point out a couple of factual backgrounds to this. Regardless of what you would rule on this case, one of the things that I think all counsel would agree on is that this family has been torn apart from a variety of things, one of which includes the case that's in front of the court today and that's probably never going to be solved, unfortunately. Another unfortunate fact as well as a consequence of this case is that Elmer Hemminghaus, who is now well into his 90s, finds himself living in a home that he used to own and now belongs to one of his children and is trying to figure out how to pay for his medical care. Elmer, in his lifetime, he was a farmer and a truck driver. He acquired a great deal of wealth and, you know, for the standards of Bond County that we live in, did very well for himself, worked very hard. And in his lifetime, he transferred a lot of his real estate to his children. He has three children. He has Gary Hemminghaus, which is a defendant in this matter. He is the oldest son. He had Janet Eyman, his daughter, and then Bobby Hemminghaus, his youngest son. He was married to Betty for his whole life. Betty passed away last year in a nursing home. And again, throughout that time, he acquired a lot of wealth. He ended up being a farmer. He did very well. He transferred a lot of that real estate to his children, built houses for his children. In early 2011, Gary, who was farming with his father, had been farming since the early 90s, had come out of his case, decided that Gary didn't want to farm anymore. So that created some conflict between Gary and his father, Elmer, and Elmer just decided that, okay, if you don't want to farm anymore, then I'll help you make that decision now. You can't use my equipment. Almost all of the equipment at the time this was decided in the fall of 2011 was with Elmer at his house on his property. There was only a few things that actually was on Gary's property, and we'll get to those in a second. So in the spring of 2012, when it becomes time to farm, Elmer wants to get these few items that his son still has back from him, and conflict goes on of a nature that we'll never know, which ultimately results in a replegant action being filed by the trusts of Elmer Hemminghaus and Betty Hemminghaus. They filed that at the beginning of 2012 for a replegant action, and what they were asking for the court to do is to find that they were entitled to possession of about six particular items of property, totaling only $167,000, I believe. There was a planter, a small tractor, and some other miscellaneous items. After that had been filed, again, those were the trusts filing, saying they were entitled to possession, the replegant's merely a possession action. The defendant, Gary Hemminghaus, then hires counsel and counsel files an answer and a counterclaim. So one of those counterclaims was that Gary Hemminghaus was entitled to the ownership, not just the possession, but the ownership of not only the six items that had been listed in the initial replegant by the trust, but to another 12 to 14 items, totaling almost $1.4 million of assets. And Mr. Gary Hemminghaus was alleging that his ownership interest was created by an oral agreement that he had with his father in 1991. I would point out to the court, because it's going to become relevant in our jurisdictional argument, is that nowhere did Mr. Hemminghaus' Gary say that he got any ownership interest from his mother, Betty, who had half interest in those properties in 1991. He didn't say that him and his mother had an agreement. He said him and his father had an agreement. Now, when you say properties, you're talking about personal things. Personal property, the farm equipment, yes, ma'am. Now, wasn't all the farm equipment the sales receipts? Did they only bear Gary's name? No, sir, there was a variety of different entrustees on those sales receipts. You had some that said Hemminghaus Farms and some that said Gary on them. And there were – I don't believe that anyone ever actually said Elmer, but one of the things that actually came up in the trial, ma'am, was that the monies being used for that actually came out of Elmer's account. Okay? Was that the Hemminghaus Farms account? Hemminghaus Farms account, yes, ma'am. But Gary had access to that account. Gary was on the account as well as was Gary's wife, Sheila. They were both on that account of signatories. And the court, interestingly enough, ultimately ordered in that case, which I'll get to because it provides an interesting level of fact, is that the monies in that account belonged to Elmer. But yet there was a decision made by the court that the property belonged to Gary, not because of the sales receipts, because the court ultimately concluded, consistent with the allegations that they had made, is that Gary and Elmer had an agreement in 1991 that that property would all belong to Gary. The court ultimately ruled that was their decision. Well, if it was a joint account, it wasn't an account where Gary was a co-signator or something, or he had full access to the account in any way he chose to use it, correct? He had. You know, that was never really clear, ma'am. Keeping in mind we didn't represent them at the trial court, but it was never really clear from the record or from even talking to Hemmings or when those accounts came up in these post-trial motions that we made who really the, you know, the way that account was written, the original documentation about, it said Gary, or it said Hemming House Farms. And is that a legal entity? It was not a legal entity, ma'am. It was merely a trademark that they were using, and I tried to uncover that to whether it actually was a partnership or whether, you know, it could have been a partnership by— They both had operating farms that they— They both? —operated separately, correct? Well, not really. Gary had ground that he owned in his own name that his father had given him. But now, from what I just heard you say, that was consistent with what he had done for other— Absolutely. —children. Absolutely. And so he had—but Gary had property that his father had got for him. Elmer still had property in his name. He had property in other children's names. And then Gary did have a little bit of ground that he was farming for a third party. When they— Did any of the other children farm? I believe the younger son, Bobby, helped his father some, but I don't know that he participated at the level that Gary may have. He did have his own land and farm his own land like Gary. He had some land that his father had transferred into his name. But what you would find—and it's not in the record necessarily because it wasn't an issue— is that this ground that Elmer and his wife Betty had given to their children, with the exception of the part that Gary had actually acquired, and his dad helped him in the 60s, all the ground that they had, except for that, even though it had been transferred to the kids, the kids were using the money from this form of rents to help pay for their care, help to pay for mother's nursing home expenses, etc. So the estate plan was poorly done, but when they transferred the property, the family was really using those funds, except for Gary's 120-something acres, to help pay for their medical care. Okay. So when the replevant action started, they filed a counterclaim alleging that there was this oral agreement from 1991, three years before the trust had been created, wherein Gary was saying, I own this property, and I own it because of this agreement that my father and I had. And they—at trial, they did use information that you suggested, ma'am, like the names that were on the receipts, etc. And Gary took the tax advantages. And Elmer testified, yes, I was aware my son was taking the tax advantages, but he was there to help his children. He didn't get into— But doesn't that evidence a degree of ownership? I mean, you're not supposed to take a tax write-off on something that somebody else owns. Well, I think there's a tax rule that says you can't. And again, whether or not that rose to the level of ownership to prove the claim, I think people could quibble about that. But our argument doesn't even get into the merits of the court's decision because our position is that regardless of the court's ruling, Elmer and Betty had an interest in that property. Elmer and Betty. To which property? To the farm property. The personal property. The personal property, yes. I'm sorry. To the farm equipment. They had an interest in that. They had an interest in 1991, 50-50. And then if they had this agreement, Elmer and Gary, that agreement would have been at issue as to the 50 percent that Elmer owned at the time. Now, as you roll forward into the years and they start doing their affairs the way that they're doing them, you know, it gets really muddy. I agree with the court about the tax returns and the receipts and the Heminghouse Farms account and who owned it and who didn't own it and who had access. But the ultimate issue that we've raised, Your Honors, is that this case was between the trust. The original case was between the trust and it was between Gary. Elmer and Betty were not involved in that case. Elmer and Betty, when the case was filed, they had nothing to do with it. The trust were saying we believe we own the property. But whether or not they owned that property at the time they filed the replevant action is predicated on the fact of what was this agreement that Elmer made with his son in 1991. Don't you think that Elmer then becomes a necessary party? Absolutely, ma'am. And that's what our argument is and that's what we filed in our petition to vacate the September quarter is that at the time when they filed their counterclaim, raising this oral agreement regarding the ownership of the property, not the possession, the ownership based upon some oral agreement from 23 years ago, 22 years ago at the time, that made Elmer and Betty a necessary party because we're now talking about ownership of stuff that predates any of these trusts. But didn't, at least in the defendant's brief, that police brief, they cited, they showed a picture of the caption and it had Elmer's name on it. Sure, I'd love to explain that to you. Well, please do. Okay. The original case was filed in March. They filed their answer April, May. And whatever's going on between then, I don't think was much, unfortunately, but I wasn't there. On June 14th of 2012, when the only parties to the case are the trusts and Gary, counsels for the trust filed a petition for leave to amend. That petition for leave to amend adds a proposed amended complaint, as you're supposed to do. That proposed amended complaint now has Elmer listed at the bottom in his individual capacity. There was no petition for leave to amend to add part of the line, mind you. It was the amended complaint, but it still now has Elmer on it. And it adds a count for conversion regarding the monies that was in this Heming House Farms account. That petition for leave to amend was never acted upon. It was not addressed. But yet when they get to September, we then have a trial. And that trial deals with the monies in this account on that conversion claim. Did the court have jurisdiction at that time to even address that account? I would say no. I think what counsel is going to argue to this court is that the mere fact that counsel for the trust petitions for leave to amend to add a counterclaim and has put a brand-new party on that claim with a count for that party voluntarily submits Elmer to the jurisdiction of the court. That's where this issue is going to be grounded, does it? Well, wasn't Elmer there to testify? Sure. And as I understand it, the defendant did not object to the amended pleading. I mean, there was no objection to the court, and the conversion account actually went forward as if it had been filed by the court, with the court. Correct? That's a good question, Justice. It was not objected to, nor was there a leave ever granted. No, but the issues contained in the amended complaint were resolved in the trial court. As to the conversion between Elmer and Geary, I would agree with you, absolutely. And Elmer was there at the trial, and he showed up at a bunch of hearings? Elmer was there at trial. Elmer was there at hearings. I agree with you completely. Don't you think that submits Elmer to the jurisdiction of the court? I believe it presents a fair argument that I can tell you probably is an issue of first impression, because as to Elmer being there and actually participating, he would have been there as to he was the trustee of his trust. Being the trustee of the trust and being there in that capacity, I would argue, does not submit him to the jurisdiction of the court. Why? Because he is there acting as a trustee. If you're a trustee, just because Elmer happens to be the same person, but if you're there acting as a trustee of a trust in that capacity, you have not individually, as to your own liberties, properties, et cetera, submitted to the jurisdiction of the court. You're two different people. I understand that distinction, but what I don't understand is if the court took up the conversion issue, which was a personal issue between Elmer and Gary. Yes. I don't understand why Elmer doesn't submit himself to the jurisdiction of the court on that issue, because the issue was litigated. I think that that's an issue that this court would have to address, and I can tell you I find no case law that goes either way to determine that exact factual scenario. If a non-party to a cause of action, which prior to June 14th, he was a non-party, Elmer individually. He has this attorney representing the trust, files a petition for leave to amend the complaint. Then in that amended complaint, there's a brand-new party with a brand-new cause of action that never gets ruled upon. Then it goes to trial, and they rule upon that issue. Did the court have jurisdiction at that time over that party, Elmer, in that issue? I can be honest with the court. I don't know the answer to that question, and I find no case on point. It's a fair question. But usually a party who doesn't want to be there will file what used to be called a special and limited appearance, which still can be filed. We still have rules on that. Absolutely. But your point is he didn't have to because it wasn't before the court. The conversion action was never officially before the court because it was never – Absolutely. Just because of murder, wasn't it? Just because – but can't you – I mean, it seems de facto that the court did rule on it if it became an issue in the case that you decided. Absolutely. That's a fair question, ma'am, for this court to address. And my position would be because if otherwise, if someone can file a request for leave to amend, and really get it to add a party because even though it didn't specifically ask for leave to add a party, was there any objection to the conversion action going forward? It was never addressed. Until the date of trial on September – I'm talking about during trial. It was never – there was no objection raised by the defendant as to the conversion claim, no. I mean, it was addressed at that trial. It was an issue that the court had full vested jurisdiction over. And again, I think I would ask this court to consider the fact that absent there being a ruling granting someone leave to amend to add a party, not just to add an amended complaint but to add a party, the court has to grant that authority to someone. It just can't, by passively letting something happen, convert jurisdiction onto the court. I mean – It sounds to me, though, like you're arguing against yourself because it was your client who wanted to come in. It was Elmer who wanted to come in. Elmer was going to come in at least at that point as to the conversion claim. He wants to be there. So the people who should have objected would be the FLEs. But again, my whole argument is that Elmer was not in front of the court from Elmer and Betty. So again, I'm going to keep in mind we're talking about Elmer. We've not even addressed Betty. But as to Elmer, if his – if the court has no jurisdiction over him, the order that was entered in September divesting him of $650,000 worth of personal farm property would be void. That's – If Elmer is there testifying, I don't understand why it's void. Well, if the court has – again, the mere fact that he's testifying doesn't confer jurisdiction. If he – if the court had jurisdiction over Elmer individually, then they would have any order of any capacity that affects his property interests would be void. Let me ask, in your post-trial motion, did you raise that issue? Which issue, ma'am? The – Jurisdictional issue. Jurisdiction wasn't conferred because this amended complaint had never been granted. Well, we actually – when we raised in our post-trial 1401 petition to vacate – I can point out to the court a petition to vacate consistent with 1401 is a complete independent cause of action, even though you file it within that case. It was a brand-new cause brought by Elmer and Betty individually. When we brought that cause of action, we served the defendant. The defendant never answered the petition, never filed any responsive pleading to the petition, raising any issues that the court is discussing right now. We merely went to – had the hearing on my post-trial petition. The 1401 petition. The 1401 petition. No answer on file by the defendant, no responsive pleading on file by the defendant. If you read the transcript from the initial hearing before our motion to reconsider, there was really no defense raised by the defendant. And so the court found in favor of them saying two things. One, it was improper for Elmer to argue that he was now the proper owner of the personal property, which is not what he was arguing, and two, that he lacked any meritorious defense and there was no due diligence. In my motion to reconsider, I raised it to the court and said, look, in our jurisdictional argument, whether or not there was a meritorious defense is moot because as it relates to a lack of subject or of personal jurisdiction, meritorious defense is not relevant. And Elmer, moreover, was not arguing that he was now the owner of the property. What Elmer was arguing is that he was a necessary and indispensable party to the initial cause of action. If he tried to transfer the property into his trust at some time after 1994 when they were created, whether that was something that actually put property into the trust, again, it's all predicated on what happened in 1991. I mean, that was the crux of our 1401 petition is that it had no personal jurisdiction over Elmer and Betty. And the issues that I'm now talking to the court about, about Elmer then his attorney filing this request for leave, et cetera, I want to make clear that only deals with Elmer. It doesn't deal with Betty. In the response of pleading in this court that the defendant has filed addressing our issues here, nowhere in that document does Betty Heminghouse even appear. Betty had every much of a right in that property as Elmer. She never appeared in court at any time. There was no plea. She can waive her appearance, can't she? She can what? Can't she waive her appearance? I don't think so. I think the issues of personal jurisdiction are so absolute that a court has to acquire personal jurisdiction over a party to enter any order that affects their property. And that can be done by one of two ways, of which counsels are doing one as it relates to Elmer, either a service of process consistent with our rules and civil procedure, or two, that person voluntarily submits themselves to the jurisdiction of the court. I think the waiver you're referring to, Lady Justice, could be voluntary. Go ahead. Voluntarily submitting yourself to the jurisdiction of the court. But, again, as to Betty, that never happened in any capacity. And even if you found that Elmer had, there is no argument that Betty ever did. And as a necessary party, it would have to be D.B. Boyd because she was not front and forth. Thank you. Thank you, Mr. DeBoer. You'll have the opportunity for rebuttal.  Mr. Sheffelberger. May it please the justices' counsel. Your Honors, I'm Patrick Sheffelberger, and I represent Gary Hemminghaus in this litigation. I'll try to focus in on what appears to be some of the justices' concerns are. First of all, factually, I believe there was another appeal filed in this court regarding if it was on the merits of the case that was dismissed as the parties moved forward, not decided to move forward on the merits, but on the 1401 theory. Second of all, I think factually my belief is that just about all of the receipts that the justices mentioned were, in fact, in Gary Hemminghaus' name, and also that Gary Hemminghaus depreciated this equipment on his tax return for a period of 25 years to and throughout the trial. Was Betty on any of the documents or on the bank account? No, I don't believe so. And I think our counterclaim was against Long before on the theory that their agreement was that it would be Gary's equipment. You mentioned another appeal in this case? Am I correct that there was an appeal filed and it was dismissed on merits? Would you like me to refer to that? My belief is that that's true. You can do that. I believe it is. But not on this theory. They switched counsel and Mr. DeVorce off it to pursue this theory. Your Honor, I cite the statute. I believe that kind of the crux of the law we're dealing with is if parties do something to submit themselves to the jurisdiction of the court, that's sufficient. In this case, not only did Elmer Hemminghaus file a motion for leave to add a conversion claim. Not only did he do that, but he also offered evidence on that claim and received a judgment on it. So, essentially, that claim was solved through the conclusion of the judgment on behalf of Elmer Hemminghaus. Also, I would say that he raised and argued and presented testimony by way of defense to the counterclaim whereby Gary Hemminghaus sought title of the equipment. So, that issue was litigated. Regarding his appearance in court, my belief is I seem to conclude based upon my review of the record that he appeared in court nine times. And, frankly, the hotly contested issue in this case was the equipment. And the motion for leave that I essentially photocopied into my brief was one that was filed by Elmer Hemminghaus's lawyer, and it was in furtherance of raising this claim for conversion. So, his name for the first time appears individually then, which I believe the very act of filing the motion on behalf of an individual party, that party becomes submitted to the jurisdiction of the court. I need something clarified. This alleged oral agreement happened in 91? Approximately, yes. So, all the personality in issue, all arose before the trust was formed? You're saying whether they acquired title prior to the trust being formed? Somebody acquired title. Did any of it come into existence with respect to either the trust or individuals, claimed individuals, after the trust was formed? You mean, did they acquire title after? I believe so. Yeah, I think there was. I think the best indicator of that, Your Honor, would be if the court reviewed the receipts which were filed and which were placed in evidence as property was accumulated. Okay. I think that's the best evidence of that. And then I think secondarily, as to the issue of when things were acquired, I think the court could track items with the depreciation schedule of my client and show on his tax returns. So, in addition to what I've said, and I think I'm trying to focus in here, that in fact, because the equipment issue was about to go to trial, the day of trial, Elmer Hemminghaus sought a continuance based upon the fact that I think he wasn't ready to go to trial on the equipment. So, he sought a continuance, filed the pleadings, offered a defense, and then he offered testimony in favor of his amended claim for conversion that was in his individual name. He did all of these things besides appearing in court, did a number of things that I think submitted him individually to the jurisdiction of the court. Was Betty's name ever on anything? Was it on the Hemminghaus Farms account? I don't believe so, no. I mean, how would you know if you're filing a claim for conversion that Betty has an interest? How would I know whether she does or doesn't? When we filed our counterclaim, it was against Elmer individually because, one, we believed that they had an agreement, and two, that Gary himself had depreciated the equipment, and neither Betty nor Elmer had ever depreciated the equipment. So, we didn't believe Betty had any interest in it. So, did your counterclaim actually name Elmer individually or just the trust? Oh, yeah, we named Elmer individually. And that was filed prior to his motion to amend his complaint? I'm not sure. Actually, I believe so, yes. I believe so. Do you know if your counterclaim was filed with your answer? I think we filed an answer, and I think we later filed an amended answer with the counterclaim. Your Honor, I mean, ultimately, I think the reason for, I mean, the philosophical basis for there being a requirement that parties be served is so they have notice of when their rights are being adjudicated. I do agree with that. However, in this case, given the totality of circumstances, I mean, Elmer Eminghaus participated in the litigation, part of which was as an individual, I believe, submitted himself to the jurisdiction of the court. Thank you. Thank you. Do you have any rebuttal, Mr. DeBoer? Ma'am, to answer your question regarding the timing of the filing, the answer included the counterclaim of the defendant was filed, may be amended, in May 15th of 2012. And is that when the counterclaim was raised? Yes, ma'am. Was that prior to the pleading you referenced? Yes, ma'am. That was filed on June 14th. So by the time you filed your amended pleading, Mr. Elmer Eminghaus was already named individually. He was named individually, but he was not, the court had not yet acquired jurisdiction over him because the counterclaim was not served upon him, nor did he voluntarily enter an appearance as it relates to that particular pleading. Well, once he shows up to talk and testify with the counterclaim pending, do you believe he's waived your personal jurisdiction? No, ma'am. I think that it is a plausible position to take, and I think it could be one that could be found in that favor, that the actions of Elmer could give the court jurisdiction over him. I think how much it takes, I think, is a question for this court. I think merely because a counterclaim gets filed naming him as a party. At that point in time, I think we would all agree he needs to be a party. What does it take for him to be made a party formally from a jurisdictional perspective? Again, I think the statute and then a case law is clear. It's very strict. You either have to voluntarily submit or you have to be served. At that time, I don't think Elmer had ever voluntarily submitted in his individual capacity. There's no evidence that I've seen that there was any material activity in this case in May or June prior to the time they had a trial in September. Well, at September, when he comes in to testify, do you think he waived jurisdiction at that point? I think you could find that way. I would argue, though, that he did waive jurisdiction because, again, he was there testifying for other reasons. He was there as the trustee of his trust. But he was defending the counterclaim as well. I think it would be a real clear argument for the court if the trustee was a different person and then Elmer also showed up that day and argued on this conversion claim. I think it's real clear then that he voluntarily submitted. Whether he submitted now, again, I think it's a question of fact for the court to determine whether he did enough to rise to that level. If that's final vote, I would still take the position that nothing has been addressed as it relates to Betty. And where does Betty's name appear on anything? In 1991, Elmer and Betty had been married for years. Any personal property that belongs to Elmer is marital property. It belongs to Betty as well. But it could have been titled in his name alone. It doesn't matter from a marital property perspective. You're getting into a whole different— No, I understand the theory. That's your theory is that— Our theory is that— —there wouldn't have been a property law if there would have been a divorce. And I think there's evidence in this case to support that it belonged to both of them as well because there was evidence at trial elicited by Elmer that Elmer and Betty had actually taken it upon themselves to transfer their representative 50 percent interest in the farm property into each of their individual trusts. That knowledge and information was in front of the court. So the court and the defendant were on notice that Betty had an interest in this property. Whatever property there was extant at the time the trust was formed. Yes. At the time—and that was also discussed at the trial too. And then I think the judge brought it up. Well, when they had this agreement in 1991, how does that relate to the property today? Well, those are the allegations of the defendant that that agreement that they made in 1991 rolled through to today. And when they owned whatever tractor they owned in 1991, they took it and they traded it in on a new tractor and they added funds if necessary out of Hemminghouse Farms. And then when that tractor—they went and got—so the property that existed as of the date of this filing related back to the agreement that they had made. There was no allegation that, well, because Gary's name was on the receipt and the money came out of Elmer's account, that that was their agreement that gave him ownership. It was their argument that said that the agreement from 1991 ultimately gave them the ownership. Now, those receipts that they had provided, was that an indication maybe to support that theory? It certainly could have been. I don't disagree with that. But we still have the issue of were Elmer and Betty necessary parties. That's what I asked the trial court to give us an answer on and they never got an answer. Were they necessary parties? If they ruled that they're not, we could have then went forward. They never ruled that they were not. Counsel has never argued that Elmer and Betty were not. When he should have filed an answer in my 1401 position, he could have taken the position that maybe Betty wasn't a party. That was never taken. So there's never been any objection to both of them being a necessary party. And the only argument that's been raised is if Elmer has voluntarily submitted himself to the jurisdiction of the court. He very well may have. But Betty never did. Thank you very much. Thank you. Thank you both for your arguments and reasons. We'll take the matter under advice, but an underruling. Thank you very much. Thank you. Thank you.